DECISION
{¶ 1} Relator, Benona P. Osborne ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue a writ of mandamus. Relator filed objections to the magistrate's decision, and the commission filed a memorandum opposing the objections. This cause is now before the court for a full review.
 {¶ 3} Relator lodges two objections to the magistrate's decision. First, relator argues that the magistrate erred in concluding that relator's work performed at her food service operation is evidence that she is capable of sustained remunerative employment. More specifically, relator maintains that the work she actually performed in 2001 did not meet Dr. Murphy's restrictions limiting relator to "repetitive work" that is "single task specific." Relator points out that in 2001 she performed jobs that consisted of "at least two or more tasks" and that were not strictly repetitive.
 {¶ 4} We agree that the record shows relator performed such tasks as cooking, taking orders, food preparation, maintaining inventory, supervising other workers and completing paperwork. Some of these activities are repetitive and fall within the sedentary category. We agree, however, that some of these tasks, by their very nature, were not simple or always repetitive; rather, they demonstrated that relator's actual capacity for sustained remunerative employment goes beyond the restrictions offered by Dr. Murphy. But we fail to see how this distinction supports relator's position. Rather, it *Page 3 
serves to underscore the correctness of the magistrate's conclusion that relator possesses the capacity for sustained remunerative employment. That many of the activities she performed went beyond her medical restrictions demonstrates that the commission did not abuse its discretion in so finding. The first objection is, accordingly, overruled.
 {¶ 5} In her second objection, appellant argues that the record does not contain evidence of her current ability to perform sustained remunerative employment. But the magistrate correctly observed that "[n]othing demonstrates capacity better than actual performance." Moreover, the magistrate correctly noted that the record contains no evidence that any nonmedical factor had changed between 2001 and 2006 except that relator was several years older. Moreover, the reports of Drs. Murphy and Ross were some evidence that relator possessed some residual functional capacity and, thus, was not medically incapable of sustained remunerative employment. For these reasons, relator's second objection is overruled.
 {¶ 6} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 KLATT and McGRATH, JJ., concur. *Page 4 
 APPENDIX A IN MANDAMUS MAGISTRATE'S DECISION {¶ 7} In this original action, relator, Benona P. Osborne, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 5 
Findings of Fact: {¶ 8} 1. On June 1, 1973, relator sustained an industrial injury while employed as a press operator for Raytheon Appliances, Inc. The industrial claim is allowed for "right lower leg injury; sprain neck; depressive disorder; disc displacement; sprain back," and is assigned claim number 73-12752.
 {¶ 9} 2. In October 1978, relator applied for PTD compensation. Thereafter, the commission awarded PTD compensation beginning October 23, 1976.
 {¶ 10} 3. In January 2003, a Special Investigations Unit ("SIU") of the Ohio Bureau of Workers' Compensation ("bureau") began an investigation into allegations that relator operated a food service at the VFW located at Ironton, Ohio. In February 2004, SIU completed its investigation and moved for the termination of PTD compensation, a declaration of an overpayment, and a finding of fraud.
 {¶ 11} 4. Following a March 30, 2004 hearing, a staff hearing officer ("SHO") issued an order terminating PTD compensation effective June 1, 2001, declaring an overpayment, and finding that the compensation was fraudulently obtained.
 {¶ 12} 5. In the SHO's order of March 30, 2004, it was found that relator was working when she operated a food service for the VFW from June 1 through November 2001. The SHO's order further finds:
 * * * [T]he activities the claimant performed, and the time she spend [sic] doing so, show she is capable of sustained remunerative employment on at least a part-time basis, if not also a full-time basis, in the food preparation and kitchen management field.
 The affidavits noted above indicate the claimant worked essentially a full-time shift, 5 days a week. They also indicate that during this daily period the claimant engaged in such *Page 6 
activities as taking orders, food preparation and cooking, serving orders, tendering payment, overseeing other workers, purchasing and stocking food inventory, maintaining any paper work, and running the operation. The extent of this activity indicates the claimant is capable of such work as food assembler, food and beverage checker, food checker (cashier), and food service supervisor, as these are defined in the Dictionary of Occupational Titles (DOT), on at least a part-time basis, if not also a full-time basis. All of these jobs are either light or sedentary positions.
 {¶ 13} 6. On September 21, 2005, relator filed an application for PTD compensation.
 {¶ 14} 7. On December 1, 2005, at the commission's request, relator was examined by James K. Ross, M.D., who wrote:
 This claimant can work in any sedentary position, but due to age and lack of conditioning leaves her as a poor candidate for most jobs. It is important to note than [sic] motivation to work and where to work can make any person an excellent performer, which means that motivation may be more important than physical age and abilities do.
 {¶ 15} 8. On a physical strength rating form dated December 14, 2005, Dr. Ross indicated that relator can perform only sedentary work.
 {¶ 16} 9. On November 22, 2005, at the commission's request, relator was examined by psychologist Michael A. Murphy, Ph.D. In his eight-page narrative report, Dr. Murphy wrote:
 What is the Injured Worker's occupational activity capacity?
 The Injured Worker's psychological condition is not work-prohibitive.
(Emphasis omitted.) *Page 7 
 {¶ 17} 10. On December 7, 2007, Dr. Murphy completed an occupational activity assessment form. On the form, Dr. Murphy placed a checkmark by the following preprinted statement: "This injured worker is capable of work with the limitation(s) / modification(s) noted below."
 {¶ 18} Below the preprinted statement, Dr. Murphy wrote: "repetitive work [and] single task specific."
 {¶ 19} 11. Following a March 29, 2006 hearing, an SHO issued an order denying relator's PTD application filed on September 21, 2005. The SHO's order explains:
 The injured worker is currently 70 years old, has an 8th grade education, and a work history as a press operator and factory laborer in the late 1960s and early 1970s. Her treatment under the claim has been strictly conservative. She was previously awarded permanent total disability compensation at some time in the late 1970s. This compensation was terminated by the Commission at hearing, dated 03/30/2004. The decision to terminate was based on an investigation by the BWC which supported a finding that the injured worker was involved in running the food service operation at the VFW post in Ironton, Ohio during at least the latter half of 2001. The hearing order [sic] found that the injured worker's activities at that time involved cooking, preparing and serving food, cleaning the kitchen, hiring other employees for the kitchen, purchasing and stocking the food inventory, maintaining the paperwork, and processing payments from customers. The hearing order [sic] went on to find that this activity would enable the injured worker to perform work as a food assembler, food and beverage checker, food checker (cashier), and food service supervisor, all of which jobs are either classified as light or sedentary positions. The investigation report indicated that the injured worker only stopped performing this work activity when the manager of the VFW post asked the injured worker to sign a contract, pay rent, and obtain insurance coverage, including worker's compensation coverage, which she could not because of the status of her own claim. *Page 8 
 The injured worker was recently evaluated for the Commission by psychological specialist Dr. Murphy and orthopedic specialist Dr. Ross. Dr. Murphy indicated in his report that the injured worker had a 22 percent impairment, which would not prevent her from performing repetitive, single task specific work. Dr. Ross in his report indicated that the injured worker had a minimal 8 percent impairment, and that she would be capable of performing sedentary work. He also indicated that the injured worker demonstrated several positive Waddell's signs of symptom magnification upon exam. Dr. Ross was not aware that the injured worker had previously been receiving permanent total disability compensation for approximately 25 years, the fact that it had been terminated in 2004, and the specific reasons for such termination. Dr. Murphy was aware that the injured worker had previously been receiving such compensation, but does not indicate in his report that he was aware of the specific reasons for its termination.
 Although the injured worker's non-medical disability factors all appear to be negative on the surface, the findings of the Commission order, dated 03/30/2004, indicate that the injured worker has demonstrated an actual capacity to perform a number of different types of work activity which would fall into the sedentary and light physical demand range. This type of work activity would fall within the general restrictions listed in the conclusions by Drs. Murphy and Ross. Furthermore, actual work activity is prima facie evidence of an ability to perform such work, regardless of the conclusions of medical examiners. The only thing that has changed is that the injured worker is not four years older. Permanent total disability compensation was never designed to compensate someone for simply growing old. See DeZarn v. Industrial Commission (1996), 74 O.St.3d 461.
 Therefore, based on the above analysis, the SHO finds that the injured worker has not met her burden of proof that permanent total disability compensation should be reinstated in this claim.
 {¶ 20} 12. On September 25, 2006, relator, Benona P. Osborne, filed this mandamus action. *Page 9 
Conclusions of Law: {¶ 21} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} The SHO's order of March 29, 2006, reasons that the light or sedentary positions relator performed from June 1 through November 2001, fall within her current residual functional capacity as determined from the reports of Drs. Murphy and Ross. Finding that the only nonmedical factor that has changed since November 2001 is that relator is some four years older, the SHO concludes that relator is medically and vocationally able to perform sustained remunerative employment.
 {¶ 23} According to relator, the jobs she was found to have actually performed during 2001 do not meet her residual functional capacity as shown by the reports of Drs. Murphy and Ross. That is to say, relator contends that the work she performed as a food assembler, food and beverage checker, food checker (cashier), and food service supervisor, all of which jobs are classified as light or sedentary positions, does not meet her residual functional capacity as shown by the reports of Drs. Murphy and Ross.
 {¶ 24} However, while the SHO's order of March 30, 2004 does not tell us which jobs are light and which jobs are sedentary, that some of the jobs relator actually performed were sedentary does indicate that she performed jobs that meet the sedentary work capacity set forth by Dr. Ross.
 {¶ 25} At oral argument, relator's counsel asserted that the jobs relator actually performed in 2001 do not meet the restrictions of Dr. Murphy that she is limited to "repetitive work" that is "single task specific." However, relator presented no evidence to the commission to support this assertion. Thus, there is no evidence in the record to *Page 10 
support relator's presumption that none of the jobs she actually performed involve repetitive work that is single task specific. Moreover, as the expert on the nonmedical factors, it was well within the commission's fact-finding discretion to determine that the jobs relator actually performed in 2001 actually do permit the limitations set forth by Dr. Murphy. See State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266.
 {¶ 26} Relator also suggests that the commission abused its discretion by failing to adjudicate her "current" disability status. Relator seems to suggest that the commission's reliance upon her work performance during 2001 constitutes a failure to adjudicate her "current" status. The magistrate disagrees.
 {¶ 27} "Nothing demonstrates capacity better than actual performance."State ex rel. Lawson v. Mondie Forge, 104 Ohio St.3d 39, 41,2004-Ohio-6086, at ¶ 17. That principle is true here. In 2001, relator demonstrated her capacity for sustained remunerative employment. While the issue before the commission in 2006 was relator's current capacity for sustained remunerative employment, the SHO adequately explained the relevancy of relator's sustained remunerative employment during 2001 to the issue of her current status. As previously noted, the SHO reasoned that the nonmedical factors had not changed since 2001, except for relator having grown some four years older.
 {¶ 28} Relator's "current" residual functional capacity was evaluated by Drs. Murphy and Ross. Relator currently is medically able to perform some of the sedentary jobs she actually performed in 2001. Given that the only nonmedical factor that has changed is her age, the commission has properly determined relator's current disability *Page 11 
status. State ex rel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461. PTD compensation was never designed to compensate someone for simply growing old. Id.
 {¶ 29} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1